UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, § | | |
| Plaintiff/Respondent, § | | |
| § | | |
| v. § | CRIMINAL NO. 2:16-544-5 | |
| § | CIVIL NO. 2:18-244 | |
| BRYAN MENDOZA, § | | |
| Defendant/Movant. § | | |

## MEMORANDUM OPINION & ORDER

Defendant/Movant Bryan Mendoza filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and memorandum of law in support. D.E. 238.[1] Pending before the Court is the United States of America's (the "Government") Motion for Judgment on the Record (D.E. 247), to which Movant responded (D.E. 251).[2] For the reasons stated herein, the Government's motion is **GRANTED** and Movant's § 2255 motion is **DENIED**.

## I. BACKGROUND

In 2016, Movant was charged with conspiracy to possess with intent to distribute more than 1,000 kilograms of marijuana and more than 5 kilograms of cocaine (Count One), conspiracy to launder money (Count Two), and three counts of money laundering (Counts Three, Six, and Eight). Movant pled guilty to Count One before a United States Magistrate Judge pursuant to a written Plea Agreement (D.E. 165).

---

1. Docket entries refer to the criminal case.

2. Movant's Motion for Leave to File an Out-of-Time Reply (D.E. 250) is **GRANTED**.

At rearraignment, the AUSA offered a summary of the offense conduct to support a finding of guilt on the conspiracy charge. Rearraign. Tr., D.E. 243 at 21:16–25:23. He stated that, between February 2009 and June 2016, Movant's father-in law, Ramon Valencia Morfin, operated a large drug trafficking organization. The organization, which was based in South Texas, was responsible for bringing large quantities of marijuana and cocaine from interior Mexico, across the Rio Grande River, and into various locations in the United States, including Illinois, Georgia, and several other states. Between 2009 and 2016, the Government seized a total of 6,768 kilograms of marijuana attributed to the organization. Movant assisted by transporting drugs north out of South Texas and transporting money back south. In addition, Movant opened a J.P. Morgan Chase Bank account through which $33,340 in drug proceeds passed between 2012 and 2015. Movant also used more than $80,000 cash in drug proceeds to purchase a BMW 3281 and Chevrolet Silverado truck. Finally, agents found $25,000 cash hidden in a bathroom light socket in Movant's home at the time of his arrest, which was believed to be proceeds from drugs that were transported from Texas to either Illinois or Georgia. Movant acknowledged that the Government's factual recitation was correct and that he was guilty as charged. *Id.* at 28:6-15. The Magistrate accepted Movant's guilty plea after being satisfied that he was competent to enter a plea, there was a factual basis for the plea, he understood the consequences of entering a plea, and he was voluntarily and knowingly pleading guilty. *Id.* at 29:9-17.

The Court accepted Movant's guilty plea, adopted the Magistrate's recommendation that he be found guilty, and ordered the Probation Officer to prepare a

Presentence Investigation Report (PSR, D.E. 202). The PSR calculated Movant's base offense level, based on 6,000 kilograms of marijuana equivalent, at 32. After acceptance of responsibility, his total offense level was 29. Movant had zero criminal history points, resulting in a criminal history category of I. His advisory Guideline sentencing range was 87–108 months' imprisonment; however, because the statutory minimum sentence was 10 years, his Guideline range defaulted to 120 months.

Movant's counsel filed written objections to the PSR, arguing that Movant qualified for safety valve under U.S.S.G. § 5C1.2, which would have allowed the Court to sentence him below the mandatory minimum. D.E. 193. Counsel also filed a Memorandum of Law in Aid of Sentencing ("Sentencing Memorandum"), wherein he again argued that Movant qualified for safety valve, writing:

> The Pre-sentence Report indicates that the Defendant has met the criteria set out in 1-4 above.
>
> As to (5), the defendant was debriefed and truthfully answered all the questions concerning his knowledge of the offense. Mr. Mendoza is willing to further be interviewed by the Government. Mr. Mendoza has admitted to all relevant conduct during his debriefing as well as in the attached statement identified (Exhibit 1) incorporated herein for all purposes.
>
> \*\*\*
>
> The Defendant has disclosed his illegal activities with Ramon Valencia–Morfin, (deceased) Gerardo Serafin, Uncle (deceased) and his aunts Veronica and Patricia, as well as his brother-in-law, Silvestre Valencia. Mr. Mendoza has identified the source of the drugs as "La Tia" and he is awaiting to identify her as soon as the Government provides a photo lineup for him.

D.E. 214, pp. 4–5. Attached was a seven-page handwritten statement by Movant detailing his participation in the drug trafficking organization. D.E. 214-1, Ex. 1. The Sentencing Memorandum further detailed Movant's family history and attached several letters from Movant's friends and family attesting to his good character. The Government responded that Movant did not qualify for safety valve because he had not truthfully provided all the information and evidence he had concerning the conspiracy, and the information he did provide was already known to the Government before his indictment. D.E. 229.

Sentencing was held on September 21, 2017. *See* 9/21/2017 Sent. Hrg. Tr., D.E. 234. The Court opened the hearing by eliciting the Government's response to Movant's objection regarding safety valve. The Government stated that Movant had not been entirely forthcoming during his debriefings and failed to truthfully provide "all information and evidence" concerning the offense. To resolve Movant's objection, the Court received testimony from the Government's case agent, Drug Enforcement Administration Special Agent (SA) Suzanne Minnick. *Id.* at 8:14–39:16. SA Minnick testified that she had been investigating this particular drug trafficking organization since 2007, and Movant became involved in 2010. After his arrest, Movant debriefed with SA Minnick a total of four times, with each interview lasting a few hours. Despite his lengthy involvement and close familial relationship with key leaders of the organization, Movant only provided first names or nicknames for most of his coconspirators. He also was not forthcoming about the involvement of one of his vehicles and travel companions in the conspiracy, his utilization of aircraft in the conspiracy, and the purpose of a $15,000

4

payment he made to an undercover agent. As a result, SA Minnick believed Movant had not provided her with all the information he had regarding the conspiracy:

> Q: So both Mr. Mendoza's activities with the drug proceeds and with moving drugs, it's your opinion he was not truthful with you and that he did not provide all the information that you thought he could have?
>
> A: Yes. And I believe he was withholding quite a bit of information.

*Id.* at 15:2-7.

> A: I believe when he would tell me certain things that he was—he was giving me information, but not giving me the full picture of his involvement and the full picture of what he knew and was involved in.

*Id.* at 19:19-22.

After considering the evidence and arguments of counsel, the Court overruled Movant's objection regarding safety valve, adopted the PSR without change, and sentenced Movant to the mandatory minimum term of 120 months' imprisonment, to be followed by 5 years' supervised release. He was also ordered to forfeit $1,500,000 in proceeds from the conspiracy, as agreed upon in his Plea Agreement.

Judgment was entered September 25, 2017. Movant did not appeal. His conviction therefore became final on October 9, 2017. *See* FED. R. APP. P. 4(b)(1)(A). Movant filed the instant motion under 28 U.S.C. § 2255 on August 14, 2018. It is timely.

## II. MOVANT'S ALLEGATIONS

Movant's § 2255 motion raises two grounds for relief:

> A. Counsel was ineffective in failing to negotiate a plea agreement that provided for safety valve, which rendered Movant's guilty plea unknowing and

5

involuntary because he had been led to believe that his debriefing would qualify him for a sentence reduction; and

B. Counsel was ineffective at sentencing because he failed to investigate witnesses who would have rebutted the Government's evidence and would have presented testimony ensuring that Movant qualified for safety valve.

## III. LEGAL STANDARDS

### A. 18 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

### B. Ineffective Assistance of Counsel

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id.* This means that a movant must show that counsel's performance was outside the broad range of what is

considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689–90. With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. To show that an attorney's performance at sentencing in a noncapital case was prejudicial under *Strickland*, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. *Glover v. United States*, 531 U.S. 198, 203 (2001); *United States v. Herrera*, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir.1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

**C. Safety Valve**

The "safety valve" provision of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 allows a court to sentence a defendant below the statutory mandatory minimum sentence if the defendant meets five conditions. *See, e.g., United States v. Anchundia-Espinoza*, 897 F.3d 629, 632 (5th Cir. 2018). At the time Movant was sentenced, a defendant was required to satisfy the following criteria in order to be eligible for safety valve: (1) the defendant does not have more than one criminal history point;[3] (2) the defendant did not use violence or threats of violence or possess a firearm or other dangerous weapon in connection with the offense; (3) the offense did not result in death or serious bodily injury to another person; (4) the defendant was not an organizer, leader, manager, or supervisor and was not engaged in a continuing criminal enterprise; and (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a).

The court must determine whether the defendant qualifies for safety valve "at sentencing, after the Government has been afforded the opportunity to make a recommendation." 18 U.S.C. § 3553(f). A defendant seeking to invoke safety valve bears

---

3. The FIRST STEP Act of 2018 amended 18 U.S.C. § 3553(f)(1) to allow the application of safety valve if "(1) the defendant does not have—(A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines; (B) a prior 3-point offense, as determined under the sentencing guidelines; and (C) a prior 2-point violent offense, as determined under the sentencing guidelines." 18 U.S.C.A. § 3553(f)(1).

the burden of ensuring that he has provided all the information and evidence regarding the offense to the Government. *United States v. Miller*, 179 F.3d 961, 964 (5th Cir. 1999).

## IV. ANALYSIS

### A. Plea Agreement

Movant alleges his counsel was ineffective for failing to negotiate a plea agreement that provided for safety valve. According to Movant, this rendered his guilty plea unknowing and involuntary because he had been led to believe that his debriefing would qualify him for a reduction in his sentence. However, because his Plea Agreement only referred to substantial assistance under U.S.S.G. § 5K1.1, and not safety valve, Movant claims the Government held him to a higher standard during debriefings.

Under the terms of his Plea Agreement, Movant was required to provide "complete and honest debriefing which assists in the investigation or prosecution of other individuals, and complete and truthful testimony at subsequent trials when needed," in order for the Government to file a motion for substantial assistance under U.S.S.G. § 5K1.1. Plea Agreement ¶ 7. Had Movant merely provided complete and truthful information—even if it did not assist in the investigation or prosecution of other individuals—the Court could have applied safety valve at sentencing without a motion from the Government, regardless of whether safety valve was explicitly provided for in the Plea Agreement. *See* U.S.S.G. § 5C1.2; Plea Agreement ¶ 3 ("Concerning USSG adjustment <u>not</u> mentioned specifically in this agreement, the Defendant and Government retain the discretion to advocate the applicability of these sections to the Court at sentencing."). However, "based on the evidence presented" at sentencing, the Court

9

found "the defendant did not truthfully provide the Government all the information defendant had concerning the offense that is before the Court." Sent. Tr. at 41:3-6. Movant's disqualification from safety valve was entirely due to his own failure to be truthful and complete, and not due to any deficiency in his Plea Agreement.

Moreover, Movant testified at his rearraignment that he understood he faced a maximum sentence of up to life imprisonment, a maximum fine of up to $10,000,000, and up to a lifetime of supervised release; that no one had made him any promises regarding what sentence he would receive; and that he understood he would not be allowed to withdraw his guilty plea if he was unhappy with his sentence. Rearraign. Tr. at 14:4-13, 18:5-11, 19:25-20:2. With respect to sentencing, a guilty plea is considered knowing and voluntary so long as a defendant knows "the maximum prison term and fine for the offense charged." *Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir. 1996) (quoting *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990)). As long as Movant "'understood the length of time he might possibly receive, he was fully aware of his plea's consequences.'" *See Barbee v. Ruth*, 678 F.2d 634, 635 (5th Cir. 1982) (quoting *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981)). Thus, there is no merit to Movant's claim that counsel's failure to negotiate a plea agreement that provided for safety valve rendered his plea unknowing and involuntary.

## B. Sentencing

Movant further claims his counsel was ineffective at sentencing because he failed to investigate witnesses who would have rebutted the Government's evidence and presented testimony ensuring that Movant qualified for safety valve. Specifically, Movant

claims that if he had been called to testify, he would have refuted the case agent's testimony regarding his truthfulness and the completeness of the information he provided while debriefing. He further contends that his then-wife, Brenda Mendoza Valencia Vega, (Vega) would have corroborated his testimony.

Under *Strickland*, a petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the [case]." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also United States. v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014). Moreover, "complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative." *United States v. Fields*, 761 F.3d 443, 461 (5th Cir. 2014) (quoting *Sayre v. Anderson*, 238 F.3d 631, 635–36 (5th Cir. 2001)). To prevail on such a claim, "'the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.'" *Id.* (quoting *Day v. Quartermain*, 566 F.3d 527, 538 (5th Cir. 2009)).

Movant has failed to offer any support for Vega's availability to testify and the content of her testimony, aside from his own self-serving declarations. It is unclear how Vega would have personal knowledge concerning what information Movant provided to the Government, as she was not present during his debriefings. And any testimony she gave regarding her personal knowledge of her father's drug trafficking organization could have exposed her to criminal liability, raising the possibility that she would have invoked

11

her right not to testify lest she incriminate herself. The Court and the Government also had Movant's seven-page statement appended to the Sentencing Memorandum detailing his involvement in the conspiracy, which presumably contained the substance of Movant's proposed testimony. Rather than call Movant and his then-wife to testify, counsel elected to cross-examine SA Minnick and rely on the Sentencing Memorandum and Movant's statement to demonstrate that Movant was entitled to safety valve. Under these circumstances, counsel's strategy was reasonable.

In sum, the Court finds that counsel acted zealously and reasonably on Movant's behalf in attempting to secure a reduced sentence under safety valve. Because Movant has failed to show that he was entitled to safety valve, he has not demonstrated prejudice in counsel's failure to secure such a sentence.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Movant has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULE 11, § 2255 RULES.

A certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits,

"[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Movant is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, the Government's Motion for Judgment on the Record (D.E. 247) is **GRANTED**, Movant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 238) is **DENIED**, and Movant is **DENIED** a Certificate of Appealability.

ORDERED 5/21/19.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE